666 So.2d 1073 (1996)
Patricia Ann MISTICH, et al.
v.
VOLKSWAGEN OF GERMANY, INC., et al.
No. 95 C 0939.
Supreme Court of Louisiana.
January 29, 1996.
*1075 J. Thomas Anderson, Hammond, John Vance Robichaux, Jr., New Orleans, Walter Landry Smith, Baton Rouge, Glenn Edward Diaz, Chalmette, for Applicant.
Robert E. Winn, Joy Goldberg Braun, Sharon C. Mize, Sessions & Fishman, New Orleans, David Joseph Bourgeois, Duplass, Witmann, Zwain & Williams, Metairie, for Respondent.
Henry B. Alsobrook, Jr., Joel L. Borrello, Robert J. Conrad, Jr., Shannan L. Boudreaux, New Orleans, for amicus curiae Product Liability Advisory Counsel.
William Hector Howard, III, New Orleans, Harry Alston Johnson, III, Shreveport, Arthur H. Andrews, William S. McKenzie, Baton Rouge, for amicus curiae La. Ass'n of Defense Counsel.
JOHNSON, Justice.[1]
On October 8, 1986 Carmen Mistich was a passenger in a Volkswagen automobile that was rear-ended by a pickup truck. Her heirs filed this lawsuit in the 34th Judicial District Court, for the Parish of St. Bernard against several defendants including Volkswagen of Germany and Volkswagen of America (hereafter Volkswagen). In their original answer, Volkswagen filed a cross-claim and named both the pickup truck driver, James Thibodaux and his insurer Aetna Casualty and Surety Company (hereafter Aetna) as defendants. At trial, the Honorable Thomas M. McBride concluded that the passenger seat of the Volkswagen vehicle was defective and rendered a judgment against Volkswagen in the amount of $2,028,530.18, together with legal interest. Toward the end of trial, Aetna settled the intervention claims of Chalmette General Hospital and the State of Louisiana pursuant to medical expenses incurred by the decedent. Their right to collect the outstanding medical fees was assigned to Thibodaux and Aetna, and as a consequence of the settlement and assignment of the intervention claims, Aetna was dismissed. The trial judge dismissed all claims against James Thibodaux and Volkswagen took an appeal to the fourth circuit. The appellate court reversed the trial judgment concluding that the trial court's critical findings were "clearly wrong" and that the accident was of such severity that it would have been fatal in any event. The court of appeal assigned the proximate cause of this accident to Thibodaux. Mistich v. Volkswagen of Germany, Inc., 650 So.2d 385 (La.App. 4 Cir.1995).
On June 16, 1995 this court granted relators' application for writ of certiorari to decide whether the trial judge's critical finding that the seat was defective, was clearly/manifestly wrong such that reversal was proper. Patricia Ann Mistich, et al. v. Volkswagen of Germany, et al, 95-0939 (La. 6/16/95) 655 So.2d 352.

FACTS
On the night of the collision, Carmen Mistich was a guest passenger in a 1968 Volkswagen Beetle being driven by Katherine Palmer. The Volkswagen was proceeding in an easterly direction on St. Bernard Highway (La. Highway 46) when it was rear-ended by Thibodaux's pickup truck. Mrs. Mistich was ejected from her front passenger seat, went through the rear glass and struck her head on the grill of the pickup truck. She was found lying outside the Volkswagen *1076 on the grassy portion of the shoulder between the vehicles and transported to Chalmette General Hospital and received treatment until October 20, 1986. Eventually, she was transferred to Simmons Nursing Home, where she died on December 13, 1986 as a result of the head injuries sustained during the collision.

PROCEEDINGS BELOW
Plaintiffs alleged that there was an inherent defect in the design of the Volkswagen seat, making it unreasonably dangerous. To prove their claim, they presented the testimony of George Frederick Liebkemann, a mechanical engineer working in private practice as a consultant since 1973, Professor Robert Lipp, an engineering instructor at the University of New Orleans who is also a mechanical engineer, and Byron Bloch, an expert in automobile safety and design. These experts unanimously concluded that the seating system in the Volkswagen was defective. Volkswagen presented testimony from Lothar Siebert, a mechanical and safety test engineer who was employed with Volkswagen for thirty-two (32) years, David Blaisdell an accident reconstructionist and Dr. Vern Roberts, who qualified as an expert in biomechanics, occupant kinematics and highway statistics.
After hearing all of the testimony, reviewing all of evidence including but not limited to, crash test films, photographs, reports, studies and the Volkswagen itself, the trial judge concluded that the seat was defective and was the proximate cause of Mrs. Mistich's death. The trier of fact personally inspected the vehicle and found that although the photographs presented at trial appeared to give the impression that the Volkswagen was severely damaged, he found that "most of the damage was to the sheet metal but the passenger compartment was well maintained."
On appeal, the fourth circuit reversed the findings of the trial court and concluded that the collision was of such severity that the decedent would have been ejected from her seat even if designed as plaintiffs' experts suggested. It further determined that there was evidence the Volkswagen rolled over, and the fatality would have occurred in any event. The appellate court opined that the issue involved in this case was not credibility, but sufficiency of the evidence.
The appellate court found that testimony of Byron Bloch was improperly accepted but proved to be harmless because he failed to qualify as an expert. They were of the opinion that the trial judge abused his discretion by allowing Bloch to testify because his name did not appear on the witness list prior to the deadline of November 16, 1990. His testimony was said to have made the court order meaningless and prejudiced the defendants' preparation of their case. Relying on LSA-C.E. article 702 and the cases of Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Clement v. Griffin, 634 So.2d 412 (La.App. 4 Cir.1994), writ denied 637 So.2d 478 (La.), Bloch was described as an individual who lacked the actual scientific knowledge to testify as an expert.
The appellate court recognized George Liebkmann as an expert in mechanical engineering who engaged in failure analysis but found that he never worked in the field of automobile seats. Liebkemann's testimony was discounted because he did not determine the forces exerted upon the vehicle, the change in velocity during the collision or perform any tests to determine if his suggested improvements would have prevented the results in this case.
Robert Lipp, another mechanical engineer and expert in accident reconstruction thought the defect in the seat was in the runner and channel system which became disengaged. The appellate court was not impressed with Lipp's analysis or conclusions because they found that he consistently relied on Blaisedale's math calculations.
The appellate court determined that the trial judge abused his discretion and committed manifest error when defendants' expert testimony was discounted. They were more impressed with the testimony of defense expert Blaisdell who concluded that the severity of the accident, not the alleged defective seating system was the cause of decedent's death. Mr. Blaisdell testified that he computed *1077 the severity by calculating the delta V (the change in the velocity of the vehicles during the collision). He determined the delta V in this accident to be between 32 and 37 with studies showing that fatalities are usually produced in this range. After reviewing the underlying requirements of the preamble to Federal Motor Vehicle Standard Rule 207, he stated that based on actual test results, the Volkswagen seat withstood the minimum forces required by this rule. He acknowledged that the "T" into channel system used in the 1971 Volkswagen model was superior to the system in the 1968 model, but opined that it would not have prevented the results of this accident. He calculated the G forces which represent the amount of force exerted on a body and indicates the force to which an object is subjected when accelerated, and concluded that the G forces in this accident were between 20 to 25 with peaks in excess of 25.
According to the appellate court, the trial judge blatantly disregarded all credible expert testimony and substituted its own non-expert opinion and was clearly wrong to find that the Volkswagen did not roll over. Based on damage sustained during the collision coupled with the dirt and debris on the car, the appellate court determined the Volkswagen rolled over.
Having concluded that the defense experts were improperly discounted and the trial court allowed an unqualified individual to testify as an expert, the court of appeal then substituted its own opinion, reversed the findings of the trial judge and rendered a judgment in favor of the defendants and dismissed plaintiffs' suit.

ANALYSIS
In our three-tiered judicial system, findings of fact are allocated to the trial courts. It is a well settled principle that an appellate court may not set aside a trial court's finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly wrong. Rosell, supra at 845; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra at 1333. Where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra at 844. The reviewing court must always keep in mind that if a trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Housley v. Cerise, 579 So.2d 973 (La. 1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder's conclusions were reasonable. Stobart, supra at 883; Theriot v. Lasseigne, 640 So.2d 1305 (La.1994). Moreover, where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is most credible. Sistler, supra, at 1111; Theriot, supra at 1313. This language places the responsibility of determining which expert was more credible on the trial judge. The evidence reveals that Judge McBride made certain factual determinations, and based on the jurisprudence his reasonable findings should not have been disturbed.
This court announced a two-part test for reversal of a factfinder's determination:
(1) The appellate court must first find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

*1078 (2) the appellate court must further determine that the record establishes that the factfinder is clearly wrong (manifestly erroneous).
Stobart, supra at 882; Mart v. Hill, 505 So.2d 1120 (La.1987).
The trial judge's determination that the decedent's seat was defective, stemmed from the evidence and testimony presented by plaintiffs' experts. Unanimously, they concluded that the seat was defective and that there existed alternative designs that could have prevented decedent's death. George Liebkemann, a member of the American Society of Safety Engineers who worked extensively in the area of failure analysis during his years at Boeing and NASA, testified that the issue in question involved the strength of the seat and the manner in which it failed. After examining the seats, he found that they had come loose from the track and rocked back to the rear seat. He described the rocking motion as resembling a "rocking chair". He further stated that the "C" runners which attach to the track of the seat, came loose because the runner moved out ¼ of an inch and the seat was disengaged from the track. Relying on his acquired knowledge from his work in failure analysis, he explained the manner in which a seat can fail and stated that in a rear end collision, the passenger's weight is pressed against the upright (seat back) portion of the seat and if the impact is severe enough, something is going to fail. He further explained that if the seat's connection to the floor is strong and sound enough, the upright seat back can fail to the rear. If the connection to the floor is not sufficient, before the seat starts to fail to the rear, it comes loose from the floor. If the latter occurs, his testimony was that "the passenger is sitting on a seat and all of a sudden the seat rises up and essentially the passenger is thrown up in the air." To insure that the seat bottom will not separate from the floor, it should be designed such that the connection to the floor is stronger than the seatback. Finding that the seat was designed defectively and unsafe according to Federal Government Safety Standards and the Preamble to Motor Vehicle Safety Standard 207, his opinion was that the seat failed improperly.[2] Referring to the preamble of Federal Safety Standard 207, the seatback is supposed to fail first, and this would prevent the seat from coming loose from its floor tracks. However, if the opposite occurs, that is, the connection to the floor fails before the seatback, this would prove that the weakness exists in the tracks. His examination of the decedent's seat revealed that the tracks were weak and stated that it was defective because it came loose from the tracks before the seatback could fail to the rear and absorb energy. He shared the opinion that Volkswagen knew or should have known of this weakness since other automobile manufacturers, aware of this problem used the "T" into channel design.
Professor Lipp appeared as plaintiff's accident reconstructionist and testified that the accident was survivable, but for the defective seat. He stated that he made calculations regarding the strength of the materials involved. His calculations as to the speed of the Volkswagen was 3.5 mph and the truck at 51 mph with a difference of about 47 mph. He characterized the seat as dangerous because it was not designed in a manner to allow it to withstand a normal load of a rear impact.
Unlike Volkswagen's experts, he calculated the severity of the accident in G Forces. He stated that the seat would disengage from the runners at a very low G level, and estimated the range between 2.5 and 7. It was his finding that the level G force exerted on the seat in this accident was 20 to 25. This was also the value that defendant's expert Blaisdell arrived at. He further testified that based on tests performed by NASA, the human body can survive G Forces of 20 to 25 for a limited time. He determined that the impact caused the occupants of the Volkswagen to be exposed to 20 to 25 G forces for less than 1/10 seconds or 80 milliseconds.[3] He also agreed that an alternate seat design such as the "T" into channel would have *1079 prevented decedent's death and stated that the seat separated from the track 30 milliseconds after impact. In comparing the seat of the 1968 model to the 1971 model which contained the far superior "T" into channel design, he determined that the newer design was 32 times stronger.
The trial judge allowed Bloch to testify finding, that he had testified in several cases against Volkswagen and they were familiar with this witness. Trial judges are allowed much discretion in determining whether or not to allow a person whose location is unknown during the pendency of trial and who appears shortly before trial to testify. Bush v. Lafayette Ins. Co., 477 So.2d 900 (La.App. 1 Cir.1985), writ denied 478 So.2d 910 (La.). The record demonstrates that the trial judge's decision to allow Bloch to testify did not constitute an abuse.
In tendering his credentials as an expert in safety design, Bloch stated that he received a bachelor of arts degree in industrial design from UCLA in 1961. He worked as a research editor for Road Test Magazine and presented auto safety reports on the ABC news in Southern California which included references to the Volkswagen "ejector seat". He also performed his own crash tests and testified before Congress regarding investigations with automobile safety which encompassed the results of his crash tests with the Volkswagen seat. He further testified that he had been invited to lecture before lawyers, doctors, colleges and universities as to the effects of vehicle collisions. He stated that he is member of the American Society of Safety Engineers and was invited by a company on behalf of Volvo to provide information regarding fuel tank safety and rear impact crashworthiness.
He testified that he had been investigating this same unsafe Volkswagen seat for years. He stated that he was well aware of the defective runners which are unable to safely secure the seat to the floor when impacted from the rear. The plaintiffs introduced evidence of Bloch's crash test involving a 1967 Volkswagen Beetle, which rear-ended a pole at 30 mph where the seat failed. He based the failure on total separation at the tracks and runners.[4] He referred to the design as "poor" because it would twist and pry up from the anchorage causing the occupant to fly back into the rear of the vehicle because the "C into C" design allows the seat to slide out from the runners. He testified that Volkswagen changed to the more sturdy "T" into channel design in the 1971 model which eliminated the problem created by the side slip out action.
In discounting Bloch's testimony, the court of appeal seemed more interested in his less than perfect academic record, lack of formal title as an engineer, and the fact that he worked as a sole practioneer. They stated that Bloch's findings were not supported by reliable scientific data. However, many of his findings were corroborated by the testimony of Professor Lipp who used the type of scientific data preferred by the court of appeal.
The requirements of expert testimony are set forth in La.C.E. article 702. It states, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Formal education or training in a particular field is not always necessary to qualify as an expert in a particular field. Experience alone is sufficient. Aaron v. Bankers and Shippers Ins. Co. of New York, 475 So.2d 379 (La.App. 1 Cir. 1985); Adams v. Chevron U.S.A., Inc., 589 So.2d 1219 (La.App. 4 Cir. 1991), writ denied 592 So.2d 414, 415 (La.1992). The evidence proved that Bloch had substantial information which supported the reasonable findings of the trial court. A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous. Brown v. Morgan, 449 So.2d 606 (La.App. 1 Cir. 1984); Harrington v. Velinsky, 567 So.2d 148 (La.App. 2 Cir.1990); Edward J. Milligan Jr., Ltd. v. Keele, 610 So.2d 1087 (La.App. 3 *1080 Cir.1992) writ denied 612 So.2d 98 (La.1993); Clement v. Griffin, 634 So.2d 412 (La.App. 4 Cir.1994); Bourgeois v. Arrow Fence Co. Inc., 592 So.2d 445 (La.App. 5 Cir.1991) writ denied 596 So.2d 214 (La.1992).
The court of appeal further criticized the trial court's finding that the Volkswagen did not roll over. In reviewing the evidence, it is clear that the defense attempted to prove that the Volkswagen rolled over after impact, and that consequently, decedent's injuries were increased. The evidence reveals that even had the Volkswagen rolled over after impact, Mrs. Mistich's injuries did not result from a roll over. The evidence proves that her death was caused by the injury sustained while inside of the Volkswagen when her seat disengaged from the floor, thereby causing her to be propelled to the rear and collide with the pickup truck on impact. This finding was corroborated by Dr. Robert A. Mendelsohn, a neurosurgeon testifying on behalf of Volkswagen who determined that decedent's death resulted from the brain injury she sustained while inside the vehicle when her head struck a portion of the interior of the Volkswagen or the grill of the truck.[5] When asked if decedent could have survived if she did not sustain the brain injury, his response was "probably". It is therefore the conclusion of this court that the issue of whether or not the Volkswagen rolled over is of no consequence.
The court of appeal relied heavily on the testimony of Volkswagen's expert, Verne Robert that Mrs. Mistich would not have sustained the fatal blow to her head had she been wearing a seatbelt. Plaintiffs' experts testified that a seatbelt would not have afforded much assistance because they are designed to prevent a person from going forward in a collision. Defense expert Blaisdell agreed with this conclusion. When asked if a seatbelt can restrain a person in a collision, he stated that it won't keep the occupant from hitting a structure in the rear and that "you can still hit the rear window area with the belt on." The expert testimony provided the trial judge with a reasonable basis in concluding that the decedent was without fault because the evidence proved that a seatbelt could not have prevented her fatal injuries.
Although the court of appeal states that the case was reversed because the trial judge's conclusions were wrong and based on insufficient evidence, a review of the record proves otherwise. The trial judge's determination of causation was reasonable. He reviewed the reports, tests, films, examined the vehicle and the seats, studied the photographs and listened to the conflicting expert testimony. Based on our rules of manifest error, his conclusions cannot be wrong because substantial evidence was introduced to support his findings. Our manifest error/clearly wrong standard empowers the trier of fact to make factual determinations which should not be disturbed if the evidence supports his findings. Here, the evidence does support the trial judge's conclusions, therefore the reversal by the appellate court is set aside.
Also, we must determine if the automobile seat meets the definition of a defective product. The Louisiana Products Liability Act, LSA-9:2800.51 et seq, became effective September 1, 1988, after this lawsuit was filed and is not retroactive. Gilboy v. American Tobacco Co., 582 So.2d 1263 (La. 1991), rehearing denied.[6] The applicable law was Louisiana strict products liability law. In order to recover from a manufacturer, this plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and the condition existed at the time the product left the manufacturer's control. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986). The design of a product may be unreasonably dangerous for any one of the following three reasons:
(1) A reasonable person would conclude that the danger-in-fact, whether foreseeable *1081 or not, outweighs the utility of the product.
(2) Although balancing under the risk-utility test leads to the conclusion the product is not unreasonably dangerous per se, alternative products were available to serve the needs or desires with less risk of harm; or
(3) Although the utility of the product outweighs its danger-in-fact, there was a feasible way to design the product with less harmful consequences.
Halphen, supra at 115.
In his reasons for Judgment, the trial judge found that the seat was unreasonably dangerous when it left Volkswagen's control and that there were alternate designs that were capable of preventing serious injury or death, that the gravity of harm far outweighed the burden on the manufacturer to adopt an alternate design, and that Volkswagen had the scientific and technical knowledge and expertise to know the design was inferior, defective and dangerous. The trial court was convinced that Volkswagen knew of the danger and failed to take remedial action to protect the public by way of correction or warning and without a warning, the user has no ability or technical expertise to discover the danger which is not apparent on visual inspection. Plaintiffs alleged that there was an inherent defect in the design of the seat, making it unreasonably dangerous and based on the evidence, they met their burden and proved that it was a defective product.
Mrs. Mistich was killed as a result of both the negligent operation of the pickup truck driver, James Thibodaux and the defective Volkswagen seat. Therefore, it was error on the part of the trial judge to place full liability on the part of Volkswagen, and error on the part of the appellate court to place 100% liability on Thibodaux. In Campbell v. Department of Transp. & Dev., 648 So.2d 898 (La.1995), this court faced a similar obstacle in reapportioning fault between two tortfeasors when the trial court made an assessment of liability, but on appeal, the appellate court reapportioned fault. Undoubtedly, Thibodaux's negligence set the course for the accident, but decedent's death was a direct result of the impact sustained when her head collided with the front portion of the pickup truck because her seat disengaged from the floor which caused her to be thrown to the rear of the Volkswagen. Based on this conclusion, this court assigns 50% of fault to Thibodaux with the remaining 50% to Volkswagen.
At the time of this accident, La.C.C. article 2324 provided that the liability between two or more tortfeasors was solidary when the claimant was injured as a result of negligent conduct such as the actions involved in this case.[7] Since this accident pre-dates the amendment to La.C.C. article 2324, Volkswagen is solidarily liable for the full judgment irrespective of the 50% of liability imputed to the pickup truck driver.

QUANTUM
The remaining issue is whether the damage award rendered by the trial court was proper. The appellate court did not consider this issue because it determined that Volkswagen was not liable. It is more appropriate for the court of appeal to review the trial court's damage award and determine if it was properly rendered.

DECREE
For the reasons assigned, the appellate court's reversal is set aside and this case is remanded to the court of appeal for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
*1082 VICTORY, J., dissents and assigns reasons.
HIGHTOWER, J., pro tem., dissents for reasons assigned by Justice VICTORY.
VICTORY, Justice, dissenting.
In a lengthy well-reasoned opinion, the Louisiana Fourth Circuit Court of Appeal extensively analyzed the facts on which the expert opinions are based and concluded that the trial court was clearly wrong in holding that the plaintiffs had shown that the seat in the 1968 Volkswagen Beetle caused the death of Ms. Mistich in this case. Mistich v. Volkswagen of Germany, No. 94-0226 (La.App. 4th Cir. 1/31/95); 650 So.2d 385. The court of appeal pointed out that no seat in a car or test car manufactured up to 1990 could withstand the forces exerted in this accident when the small Volkswagen in which Ms. Mistich was riding was hit from the rear by a full-size GMC pickup truck going 47 miles per hour faster than the Volkswagen (per estimates by plaintiffs' and defendants' accident reconstruction experts). As the court of appeal stated, the "... only seat produced today in which the decedent could have survived would be the equivalent of an astronaut's seat." The evidence is clear that if Volkswagen had used the "T in channel" design in the 1968 Volkswagen involved in the accident, Ms. Mistich would have been killed anyway.
For these reasons and the reasons assigned by the court of appeal, which I encourage the reader to review, I respectfully dissent.
NOTES
[1] Judge Lemmie O. Hightower, Court of Appeal, Second Circuit, participating as Justice Pro Tempore, in place of Justice James L. Dennis. Pursuant to Rule IV, Part 2, § 3, Justice Jack Watson was not on panel.
[2] In part, the standard states that each seat must remain in place to afford its occupant protection.
[3] Based on information contained in the Human Factors Design Handbook, a human being can withstand 35 G's up to 1/10 second.
[4] The 1968 VW Beetle has the same type of seating system.
[5] Testimony from Troy Colson, a tow truck operator who arrived at the scene, testified that portions of decedent's hair were located on the front area (rather than grill) of the pickup truck.
[6] Plaintiffs' petition was filed January 16, 1987.
[7] La.C.C. art. 2324 provided:

"He who causes another to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by the act.
Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution."