| iYELVERTON, Judge.
Charlene and Anthony Henry filed a suit for damages sustained on July 2, 1992, when they were allegedly rear-ended by an eighteen wheeler driven by Floyd Anderson. The ease was tried by a jury which unanimously found that no accident occurred. The Henrys appeal that finding. Whether the jury was clearly wrong in that finding is the significant issue of this case. We affirm.
|2The claims of Charlene and Anthony are consolidated. Our opinion is written in Anthony’s case. A separate judgment is being handed down this date in Charlene’s claim, Charlene Cortez Henry v. Insurance Company of North America, et al, 96-1250 (La.App. 3 Cir. 3/5/97); 692 So.2d 1146.
At the conclusion of trial when the attorneys for both sides presented their closing arguments to the jury, both attorneys saw clearly that the evaluation of credibility was where the jury would decide the case. Thus, the thrust of the plaintiffs’ argument was to convince the jury that Anthony Henry was more believable. The defendants’ argument aimed to persuade that Floyd Anderson was the more credible. The very beginning of the argument of plaintiffs’ counsel set the stage: he told the jury right off that both Henry and Anderson had admitted lying under oath, and so the task of the jury was to decide which one’s story was closer to the truth.
In our three-tiered judicial system, findings of fact are allocated to the trial courts. It is a well settled principle that an appellate court may not set aside a trial court’s finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where two permissible views of the evidence exist, the factfinder’s [sic] choice between them cannot be manifestly wrong. Where the factfinder’s [sic] conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. The reviewing court must always keep in mind that if a trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. (Citations omitted).
_jj_For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder’s [sic] conclusions were reasonable. (Citations omitted).
Mistich v. Volkswagen of Germany, Inc., 95-939, pp. 4-5 (La.1/29/96); 666 So.2d 1073, 1077.
OPINION
After reviewing the record, we find that it was reasonable for the jury to decide that no accident actually occurred. The Henrys testified to many variations on the circumstances surrounding the accident. The jury believed Anderson who claimed he did not hit *1145 the Henrys’ ear at all. It was reasonable for the jury to credit Anderson’s story over that of the plaintiffs.
The incident happened at the intersection of Pinhook and South College in Lafayette. Henry related several different versions of how the incident occurred. He told the investigating officer, Detective Philip Fontenot, that his car was stopped in the left turn lane on Pinhook preparing to turn left onto South College; there was a vehicle in front of him and an eighteen wheeler behind him; the vehicle in front of him started to make a left turn and stopped suddenly because of oncoming traffic; and when that happened he stopped and the eighteen wheeler struck him from behind. In his deposition, Henry stated that he was stopped in the left-turning lane at a green light waiting for a green arrow; he was the first ear in the lane; and he had not moved when the eighteen wheeler hit him from behind right before the green arrow came on. At trial Henry testified that he was at a red light waiting for it to turn green when he was struck by the eighteen wheeler.
|4The Henrys claimed that their car was knocked one to two car lengths after the impact. .They described the sound as so loud it was like a bomb. Yet, pictures of the car revealed no dents or broken tail lights. There were only scratches on the absorbers, and two joints were a little tighter than they should have been. Detective Fontenot looked at the two vehicles at the scene and felt that the bumper of the eighteen wheeler should have damaged the tail lights on the Henry vehicle if they had impacted. Estimates of damage repair were around $400.
The photographs showing damage to the back of the plaintiffs’ car, and the photographs showing the relative heights of the eighteen wheeler’s front bumper compared to the car’s back bumper, make it difficult for a lay eye to understand that the damage, such as it was, could have been caused by the eighteen wheeler. The heights of the bumpers simply do not match. That the jury would have trouble with this evident mismatch was anticipated by the plaintiffs and numerous explanations were offered. One was that the car had larger size, height-enhancing tires when the accident happened but that these tires had been replaced after the accident. Another explanation was ventured that the eighteen wheeler’s bumper had been replaced after the accident. These proffers had little support in the record.
Henry also gave conflicting testimony about previous back and neck injuries. He denied any previous injuries when asked in his deposition. It later became apparent that he had been involved in accidents in 1983 and 1987 and that he injured his neck in both accidents. Also, as a result of a 1989 accident Henry broke two vertebrae in his back.
IsNot only did Henry try to conceal his prior injuries from the attorneys, but he also denied prior injuries and accidents when specifically asked by his doctors. Dr. Patrick Juneau operated on him not long after the accident for a cervical disc. Dr. Juneau testified that when he asked the patient if he had had prior injuries to his neck, Henry denied it. The doctor testified that 90% of disc injuries occur spontaneously and without any relation to trauma.
His own doctor questioned his truthfulness. Testifying about his recovery from surgery, Dr. Juneau, his surgeon, said that it was after Henry’s release that he began to complain of more pain, and of pain moving about in his body, which the doctor found unusual. Henry was not happy, according to Dr. Juneau, when he was told he could go back to work. As his neurosurgeon, Dr. Juneau was never able to find an anatomical explanation for the low back complaints. Dr. Juneau bluntly opined: “With the pattern of his complaints and the minimal findings on the studies and how it kept moving around and this sort of thing, I just felt that there was something else maybe going on there.”
Supporting the plaintiffs’ side of the case was Anderson’s admission that he offered $50 to Mr. Henry at the scene not to call the police. His explanation was that he was on probation with his employer because he had been in a few previous accidents. Anderson testified that he offered the money to Mr. Henry to avoid future problems such as the trial. Although this evidence damaged *1146 Anderson’s side of the ease, it was to his credit that he never denied offering the $50. He consistently denied hitting the Henry car. Detective Fontenot testified that Anderson told him at the scene of the incident that he did not think he hit the Henry vehicle.
|6An examination of the totality of the evidence leads us to conclude that it was reasonable for the jury to find that no accident occurred. Only by substituting our opinion for that of the jury could we conclude otherwise. Affirming the finding as to liability, it is unnecessary for us to address the issue of damages raised by the Henrys.
The judgment of the trial court is affirmed at plaintiffs’ cost.
AFFIRMED.
SAUNDERS, J., dissents.