11 KIRBY, Judge.
Plaintiffs, Janice and Harold Bonck, appeal the trial court judgment dismissing their claims against defendants, Kmart Corporation, XYZ Manufacturing, Inc., and John Hansmann. We affirm.
Janice Bonck, hereinafter referred to as plaintiff, testified that on April 18, 1995, she was shopping at the Kmart department store in Meraux. She saw a shelf with decorator tables in the home furnishings department and decided to buy one. Plaintiff put the boxed table in her shopping cart. While still in the same department, plaintiff changed her mind and decided not to get the table. She reached into her cart to retrieve the table and put it back on the shelf. As she was doing so, the table allegedly fell out of the box and landed on her left foot. Plaintiff fell to the floor seconds later.
Plaintiff stated that the boxed tables were stacked “pancake” style on the shelf. She said that when she picked up the box to return it to the shelf, she did not look at the other end of the box. She did not realize that the box had a perforated hole that could be punched out and used as a handle. Plaintiff testified that there | gwaa no warning on the front of the box about the proper way to hold it. After her fall, store employee Juanita Grapheo assisted the plaintiff and summoned assistant store manager Darrell Miley. Plaintiff said that when Grapheo arrived, the table was out of the box and on the floor. She also said that when Miley arrived, the box, the table and two of the table legs were still on the floor. She said the assistant manager picked up the table and legs and put them back into the box and took the box with him.
On cross-examination, plaintiff said that when she took the box off of the shelf, it was not torn and the flaps on both ends of the box were securely in place. She said she did not inspect the box after the accident. She did not know why the table came out of the box.
John Hansmann testified that he was employed as the store manager of the Kmart in Meraux at the time of the accident. He was informed that an accident had occurred in which a table had fallen out of a box. Hansmann explained store policy for inspecting merchandise on shelves. He did not recall whether or not he checked the aisle with the decorator table boxes on the date of the accident. He could not recall if he was working on that date.
Darrell Miley testified that he was working as a soft lines manager at the Kmart in Meraux on April 18, 1995. The soft lines manager is in charge of the apparel portion of the store. His department included the boxed decorator tables. He said the tables are always stacked one on top of the other, in a “pancake” fashion. Miley was then shown a photograph taken at the Meraux Kmart that | ¡¡showed boxed tables that had been vertically stacked. On April 18, 1995, Miley was paged and instructed to report to the scene of an accident in the domestics department. When he arrived at the scene, he found plaintiff and Juanita Grapheo, a store employee. He said that a box with a decorator table was on the floor. He stressed that the table was contained inside of the box.
Miley testified that he wrote the accident report for this incident. He was told that the table fell out of its box and onto plaintiffs toes. He said the store manager was told that the table had fallen out of the box because that is what the plaintiff reported. In the section of the accident report entitled “Customer’s Version of How Accident Happened,” Miley wrote, “Table fell out of box when customer picked up box from the buggy to put box back on shelf. Table was back in the box when I arrived at the scene of the accident.” He does not recall being told that plaintiff fell after the table came out of the *1279 box. Miley said that plaintiff was sitting on the floor and her toes were red. He noted that ice was being applied to plaintiffs toes. He stated that he did not pick up the box off of the floor but he could see that it was not torn. He could not recall what he did with the box after taking the report but he said if the box were damaged, he normally would have brought it to the store’s holding area for damaged merchandise.
Miley testified that Kmart policy is to take damaged merchandise off of the store shelves as soon as the damage is noticed. He said that when he worked at the Kmart in Meraux, he routinely conducted inspections of the merchandise on the shelves. He said he did not see anything unsafe about the decorator table boxes on 14April 18, 1995, either before or after the accident. He said other employees also inspect the merchandise throughout the day. One of those employees was Juanita Gra-pheo. She did not report anything unsafe about the decorator tables on April 18, 1995. Miley said that based on his inspection of the box, he could not determine whether there was anything wrong with the box that might have caused plaintiffs accident.
Juanita Grapheo testified that she was working as a clerk in the domestics department at the Meraux Kmart on April 18, 1995. She stated that when she came back from a fifteen-minute break, she saw the plaintiff sitting on the floor in one of the aisles. Grapheo approached the plaintiff to offer her help and the plaintiff told her that a table had fallen on her toe. She got plaintiff a glass of water and when she returned, Darrell Miley was at the accident scene. She recalls straightening the decorator table boxes on that date right before she went on the above-mentioned break. Grapheo testified that on that date, she inspected the stack of decorator table boxes to make sure they were closed and in good repair, but she did not inspect each box individually. She said the boxes looked as though they were secured. She said the boxes were always stacked flat at the Meraux store. She said she noticed prior to April 18, 1995 that the box had a perforated hole that could be punched out and used as a handle. She said that if the handle is utilized, the weight of the contents of the box is on one of the sides of the box that does not have opening flaps. She also said that there is no indication on the front of the box that there is a handle that can be made by punching out the perforated hole.
| RGrapheo said she found it unusual that plaintiff told Miley that the table fell out of the box and onto her foot because the table was in its box and in the plaintiffs shopping cart when Grapheo first saw plaintiff. She said plaintiff told her only that the box fell on her toe, but not that the table fell out of the box and then onto her toe. She said that when she saw the box in the shopping cart, there did not appear to be anything wrong with it.
Andrew J. McPhate, a mechanical engineer, testified by deposition. He examined a box described to him as the same kind that packaged the table that allegedly fell out of its box and onto plaintiffs feet when she lifted it out of her shopping cart. This box was introduced into evidence at trial. He said that both ends of the box have flaps that can be opened and closed. He described this box as six-sided with openings on only two of the sides. McPhate said a label on the box was placed, closest to one of the ends that opened. He said that the rear of the . box had a perforation line for a hand hole that could be punched out. He said that this box was designed to be carried by this hand hole. When properly carried by the hand hole, the weight of the contents in the box would be on the sides of the box that cannot be opened.
McPhate’s opinion was that the only thing wrong with this box was the placement of the label. He said the box was otherwise structurally sound. McPhate stated that the incorrect placement of the label would prejudice the handling of the *1280 box. He said the label should have been placed 90 degrees from where it was placed so that the picture on the label could be seen vertically instead of horizontally when held properly. He said that if the box is held so that the picture is right side up, then the box is 90 degrees away from its carrying position.
| fiMcPhate admitted that he did not know whether or not the box that he was asked to examine was similar to the box that plaintiff was handling on the date of the accident. Therefore, he could not say whether or not the label on the box that plaintiff was handling was misapplied. He stated that the box that he examined had interlocking flaps and, under normal circumstances, the contents of the box should not have knocked the box open. McPhate said he would not offer an opinion as to what caused plaintiffs accident.
Kmart stipulated at trial that it would be responsible for any manufacturing defects found with the box involved in the accident. At the conclusion of testimony, the trial judge granted a motion to dismiss John Hansmann from this lawsuit. The trial judge subsequently rendered judgment in favor of defendants, Kmart Corporation, XYZ Manufacturing, Inc. and John Hansmann and against plaintiffs, dismissing plaintiffs’ claims against defendants with prejudice. Plaintiffs appeal from that judgment.
In reasons for judgment, the trial judge found that plaintiffs failed to prove by a preponderance of the evidence that the box in question constituted an unreasonable risk of harm. The judge noted that the plaintiff picked up the box from the shelf and placed it in her shopping cart without incident. He also pointed out that plaintiff did not state that she noticed that the box had broken or that anything else was wrong with it at any time before or after the accident.
In Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073, our Supreme Court set forth the standard of appellate review for cases involving factual findings as follows:
It is a well settled principle that an appellate court may not set aside a trial court’s finding of fact unless it is clearly wrong. Where there is conflict in the testimony, treasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly wrong. Where the factfinder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. The reviewing court must always keep in mind that if a trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. (citations omitted) Id. at pp. 4-5, 666 So.2d at 1077.
La. R.S. 9:2800.6 defines the burden of proof in claims against merchants. The version of R.S. 9:2800.6, in effect at the time of this incident, states in pertinent part as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss *1281 sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, pri- or to the occurrence; and
|s(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
Plaintiff argues that this case is not a classic slip and fall case and, therefore, is not governed by R.S. 9:2800.6(B). However, plaintiff did allege in her petition that she fell to the ground after the table fell out of the box and onto her foot. Regardless of whether Section A or B applies in this case, plaintiffs claim fails because she did not establish that a hazardous condition existed on the premises or that the box in question presented .an unreasonable risk of harm.
Plaintiff testified that the box was not torn and the flaps were securely in place when she removed it from the shelf. The table did not fall out of the box when she put it into her shopping cart. She could not offer any evidence as to the condition of the box after the accident hecause, by her own admission, she did not inspect the box after the accident. In fact, she stated that she did not know why the table came out of the box.
Plaintiff claims that the table was out of the box and on the floor when Darrell Miley and Juanita Grapheo came to assist her. Both Miley and Grapheo contradicted that statement with their testimony that the table was contained inside of the box when they came to plaintiffs aid. Grapheo stated that the box with the table inside was in plaintiffs shopping cart when she arrived. According to Miley, 19the box with the table inside was on the floor when he arrived. Neither Grapheo nor Miley saw anything wrong with the box after the accident.
The testimony of Andrew McPhate, a mechanical engineer, established that he examined a box similar to the one involved in the accident. The box was structurally sound and the only thing wrong with it was incorrect placement of the label. McPhate stated that in order for an incorrectly placed label to play a part in an accident such as the one experienced by plaintiff, the flaps on the box would have to come open. He said that a box such as the one he examined has interlocking flaps that should not be knocked open by the contents of the box under normal circumstances. McPhate stated that he did not examine the box involved in the accident and would not offer an opinion as to the cause of the accident.
Given the evidence presented at trial, we cannot say that the trial judge was clearly wrong in finding that the box in question did not constitute an unreasonable risk of harm. The evidence also did not establish that a hazardous condition existed on defendants’ premises. The trial judge made his factual determinations after evaluating the credibility of the witnesses. His findings were reasonable in light of the record reviewed in its entirety and will not be disturbed on appeal.
For these reasons, we affirm the trial court judgment.
AFFIRMED.