JjKOSTELKA, J.
In this wrongful death and survival action, the trial court concluded that the defective condition of a state highway did not cause the decedent’s single-vehicle accident. Plaintiffs, children of the deceased driver, appeal the dismissal of their suit. Finding no manifest error in the decision below, we affirm.

Facts and Procedural History

During the late evening of March 15, 1996, Ann Pevy DeLoach Gartman (“Gart-man”), an ambulance driver for D’Arbonne Ambulance Company, responded to a call for an accident on Louisiana Highway 33, north of Farmerville. After the emergency team had assisted and collected those victims, the ambulance returned south along Highway 33 toward the hospital. While in route, and headed into a left-hand curve, Gartman suddenly turned toward the left and applied her brakes. (Exactly what event precipitated these evasive maneuvers is the issue on appeal.) The left front wheel of the van apparently locked causing that tire to go into a skid which quickly sent the vehicle into a counterclockwise rotation. The ambulance spun off the east side of the road and struck some trees. Gartman was ejected from the vehicle during its gyrations. Tragically, the ambulance finally came to a rest on its left side on top of Gartman causing her death.
Gartman’s adult children, Robert N. De-Loach and Donna D. Ochiltree, filed the instant suit against the State of Louisiana, Department of Transportation and Development (“DOTD”) seeking damages for the wrongful death of their mother as well as a survival action. After a trial on the merits, the district court agreed with plaintiffs’ position that a shoulder edge drop-off along the highway, measuring at one point four and three-eighths inches high, constituted an unreasonably dangerous condition. The court further agreed that DOTD had knowledge of this condition in that it had been created when the highway had recently been repaved. On the issue of causation, however, the court concluded |¡>that the evidence did not support plaintiffs’ theory of the manner in which the accident occurred.
Plaintiffs had suggested that the ambulance had drifted off the west (right) side of the highway and encountered a severe drop-off. They contend that the ambulance’s contact with the shoulder edge, and the driver’s attempts to remount the road surface, caused the vehicle to spin out of control and sent it on its path across the highway and into the trees along the opposite shoulder. Yet, the trial court concluded that the preponderance of the evidence did not support the idea that the ambulance had any such contact with the shoulder edge. Our review of the record reveals no manifest error in this conclusion. Indeed, the physical evidence places considerable doubt upon the accuracy of plaintiffs’ explanation of the accident.

Discussion

DOTD has a duty to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. La. R.S. 48:21(A); Ledoux v. State, DOTD, 98-0024 (La.09/18/98), 719 So.2d 43; Brown v. Louisiana Indemnity Company, 97-1344 (La.03/04/98), 707 So.2d 1240. This duty extends to the shoulders of highways as well. Ledoux, supra; Brown, supra. The highway department’s duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. Id. Whether DOTD *907 breached its duty to the motoring public, by knowingly maintaining a defective or unreasonably dangerous shoulder, depends upon the facts and circumstances of the case. Id. Even so, in order to prevail against DOTD, a plaintiff must also prove that the alleged defect was a cause in fact of the accident. Id.; Lee v. State, Through DOTD, 97-0350 (La.10/21/97), 701 So.2d 676.
|3Of course, plaintiffs do not challenge the trial court’s conclusions that the shoulder edge drop-off constituted an unreasonable risk of harm or that DOTD had knowledge of the condition of its highway. Instead, plaintiffs argue that the trial court erred in rejecting the testimony of an eye-witness to the accident. David Anthony (“Anthony”), the paramedic working with Gartman that night, testified that he saw, felt, and heard the ambulance leave the west (right) side of the road before the accident occurred. The trial court, however, found this witness to lack credibility. Particularly, the court noted that the physical evidence proved, and the experts agreed, that Anthony’s description of the ambulance sliding and rolling several times across the road could not possibly be correct. Thus, the court refused to select and accept only a specific portion of Anthony’s testimony, namely, that the vehicle left the roadway onto the west shoulder.
A court of appeal may not set aside a trial court’s findings of fact, including findings on the factual issue of causation, unless they are manifestly erroneous. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Shaw v. Russell, 26,-618 (La.App.2d Cir.03/01/95), 652 So.2d 133. The task of a reviewing court is not to assess whether the district court’s factual findings are right or wrong in an absolute sense, but to ask whether the fact-finder’s resolution of conflicting evidence was reasonable, in light of the record as a whole. Mistich v. Volkswagen of Germany, 95-0939 (La.01/29/96), 666 So.2d 1073. So long as a fact-finder’s conclusions are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Holt v. Aetna Casualty, 28,450 (La.App.2d Cir.09/03/96), 680 So.2d 117, writs denied, 96-2515, 96-2523 (La.12/06/96), 684 So.2d 937, 938.
Indeed, when findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of | ¿fact’s findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). Likewise, it is the responsibility of the fact-finder to determine which evidence is more credible when the testimony of expert witnesses differs. Mistich, supra.
As explained by Dr. Joseph Blaschke, DOTD’s expert in accident reconstruction, highway design, and traffic engineering, if the ambulance had been out of control upon Gartman’s attempt to steer the vehicle back onto the highway, there would have been physical evidence of the struggle, i.e., “scrubbing.” Particularly, there would have been definite markings on the inside of the right front trie, the edge of the roadway would have retained some of the rubber from the trie, yaw marks would have been present at the point of reentry, and there would have been some sort of disturbance in the gravel or dirt on the shoulder as the ambulance climbed back onto the road. None of these physical markings were present on the trie or along the west edge of the road. Even plaintiffs’ expert, Dr. John Glennon, who suggested that a scrubbing event could occur without leaving any markings on the edge of the highway, agreed that scrubbing would mark the inside of the involved trie.
In addition to this lack of physical evidence, plaintiffs’ version of the accident is also contradicted by the trie markings which were found on the highway surface. Beginning at the centerline and crossing the northbound lane of travel to the spot where the ambulance left the highway on *908 the east, all four tires left marks. Plaintiffs’ theory of the accident would have the ambulance spinning out of control immediately upon remounting the highway. In an attempt to explain away the lack of tire marks in the southbound lane, plaintiffs suggest that the rainfall that night acted to cool the tires and, thus, slowed the time which it normally takes for a vehicle to leave tire marks. Dr. Blaschke disagreed. Even considering the cooling effect of the rain, the ambulance would not have been able |5to skid for 125 feet (the distance from the alleged point of reentry to the beginning of the tire marks) before it began to leave tire marks.
More importantly, the left front tire left a skid mark — indicating that the vehicle had been traveling in a forward path when the wheel locked. Not until the ambulance began its counterclockwise revolution did all four tires leave yaw marks.[1] The presence of the skid mark prior to the yaw marks clearly shows that the vehicle was not out of control until that point. Thus, it was not yawing (rotating) at the west edge of the highway upon its alleged reentry.
Plaintiffs have failed to prove by a preponderance of the evidence that Gartman’s accident was caused by any contact with the shoulder edge drop-off on the west side of the road. Anthony’s testimony on this point, as well as his testimony regarding all other aspects of the accident, is clearly discredited by the physical evidence. There is absolutely no physical evidence that the ambulance traveled onto the west shoulder of Highway 33. Every individual who examined the accident scene, even including plaintiffs’ expert, Dr. Glennon, agreed in this respect — there were no tire markings near the west side of the road.
Instead, the evidence suggests other more plausible explanations: Gartman either left the highway but reentered with no difficulty or neared the edge but did not go off. Then, once safely back in her own lane of travel, she overcorrected with a steer to the left and applied her brakes. When the left front tire of the ambulance locked, the vehicle was thrown into its rotation off the east side of the highway. Additionally, the state troopers noticed considerable wear on the left front brake pad and significant problems with the left front alignment arms. This testimony suggests yet another possible cause for the accident.
[ fiFurther, Dr. Blaschke even proposes an explanation for Anthony’s belief that the ambulance drifted off the west shoulder. The expert reasoned that, from the middle rear of the vehicle, Anthony could not accurately observe the ambulance’s position on the roadway. Moreover, the weight shift as the ambulance veered to the left would create a sensation of dropping off an edge or running over a bump on the right. Dr. Blaschke also noted that Anthony failed to describe sounds which would have accompanied the scrubbing event, e.g., gravel striking the vehicle as it attempted to remount the highway.

Conclusion

The record, particularly the lack of physical evidence showing any contact between the ambulance and the right shoulder, strongly supports the trial court’s thorough and well-reasoned opinion. Accordingly, for the foregoing reasons, the judgment below is affirmed at plaintiffs’ costs.
AFFIRMED.

. Although the investigating state troopers clearly described the mark made by the left front tire as a skid mark, Dr. Blaschke explained that, in all likelihood, the tire left a skid mark that became a yaw mark as the ambulance began to rotate around its center. Like the trial court, we find this explanation to be reasonable and very probable.