1KIRBY, Judge.
Plaintiffs, Queenie White and Lois Thomas, appeal the trial court’s judgment dismissing their claims against defendants, Felicia Austin and State Farm Mutual Automobile Insurance Company. We affirm.
Plaintiffs and defendant Austin were involved in a vehicular collision at the intersection of North Galvez Street and Ursuline Avenue on May 23, 1997. Plaintiffs filed a petition for damages against defendants, alleging that plaintiffs were traveling eastbound on North Galvez through its intersection with Ursuline on a green light, when a vehicle driven by Austin entered the intersection from Ursuline causing a collision between the two vehicles.
The first witness that testified at trial was Mr. Lester Jackson. Jackson testified that he witnessed the accident in question on the morning of May 23, 1997. He stated that he was traveling in a southbound direction on Ursuline, when he saw a funeral procession that was traveling in a northbound direction on Ursuline. He said he saw a police officer on a motorcycle that was stopped in the middle of the intersection of Ursuline and North Galvez. Jackson said that just as the officer was leaving the intersection, the traffic light changed to green for the cars on Ursuline. After the light changed to green for traffic on Ursuline, Jackson | gsaw a car traveling eastbound on Galvez enter the intersection at “a tremendous speed,” pass in front of his vehicle and then hit the defendant’s vehicle, which was in the middle of a funeral procession. He said that the driver of the car that struck the defendant’s vehicle appeared to apply the brakes before the impact because the car looked like it slid into the other vehicle. He said it was obvious to him that the cars traveling northbound on Ursuline were in a funeral procession. He also said the funeral procession was about five blocks long.
On cross-examination, Jackson testified that after witnessing the accident, he initially did not stop, but continued to his mother’s house several blocks away. After talking with his mother about the accident he witnessed, he decided to go back to the accident scene and report what he saw. His testimony was “my conscience told me that I needed to go back and say that I did see the accident and that’s what I did.” *1129 Jackson said that he approached the investigating officer and told him that he saw the accident. He said the officer wrote down Jackson’s name and telephone number and then directed him to tell what he saw to the occupants of the car that was struck while traveling in the funeral procession. The officer did not ask Jackson for any details about the accident. Jackson testified that he did not remember what any of the women involved in the accident looked like and did not recognize them at trial.
Felicia Austin testified that she was driving her car in a funeral procession on Ursuline Avenue on May 23, 1997, when she was involved in a collision. She said that her car lights were turned on while she traveled in the funeral procession, which was escorted by police on motorcycles. Austin said that Kim Douglas and Jensey Gordon were passengers in her vehicle. She testified that as she entered the intersection of Ursuline and Galvez, her vehicle was struck on the driver’s side |3by another vehicle, which then caused her vehicle to slide into a parked truck on the side of the street. She said she was not paying attention to the color of the traffic lights because she “didn’t think it made a difference if the police stopped everything.” Austin said a police officer came to the scene of the accident and recorded the names of those involved in the accident. She said the officer who investigated the accident was not one of the police escorts for the funeral procession. She said she did not know Lester Jackson, but she remembered that he gave her his name and number after the accident.
On cross-examination, Austin said the front grill of her car suffered slight damage when her car hit the parked truck after the car on Galvez struck her vehicle on the driver’s side. She disputed the statement in the police report that there were only two cars involved in the accident and that the only damage to her vehicle was on the driver’s side. She said that after the collision, the driver of the other car started yelling at her and accusing her of running a red light. Austin said she told the woman that she was in a funeral procession, and then asked the woman if she saw the police officer on the motorcycle that was in the intersection right before the collision occurred. Austin said the woman said she never saw the police and then continued yelling at her.
The next witness was Kim Douglas, a passenger in the vehicle driven by Felicia Austin. She corroborated Felicia Austin’s testimony about how the accident occurred.
Lois Thomas testified that she was a passenger in the vehicle driven by Queenie White at the time of the accident on May 28,1997. She stated that their vehicle was headed eastbound on Galvez and that they had a green light as they entered the intersection of Galvez and Ursuline. Their vehicle collided with | ¿Austin’s vehicle in the intersection. She said she saw nothing to indicate that Austin’s vehicle was in a funeral procession. Thomas stated that she did not see Lester Jackson after the accident. She did speak to the police officer.
On cross-examination, Thomas said there were two vehicles involved in the accident, and she did not see Austin’s vehicle collide into a third vehicle. She said she did not see anything that looked like a funeral procession, and that there were no other vehicles in sight. She did not see any vehicles in front of or behind Austin’s vehicle, and she did not see a police officer on motorcycle at the intersection.
Queenie White testified that she was driving on Galvez Street toward its intersection with Ursuline Avenue. She stated that she proceeded through the intersec *1130 tion on a green light. After the collision between her vehicle and Austin’s vehicle, White says that she went up to Austin and asked her if she realized that she ran a red light. White claims that Austin said she admitted running a red light but said she was in a funeral procession. White testified that she asked Austin where the rest of the procession was because there were no other cars around, and that Austin then looked around and uttered a profane word. At that point, White said that she walked back to her car and waited for the police officer to arrive. She said Lester Jackson was not at the scene of the accident and that she had never seen him prior to the trial.
On cross-examination, White stated that Austin’s vehicle did not hit a parked truck after the collision with White’s vehicle. She said that she spoke to the police officer that investigated the accident. She testified that there was no funeral procession going through the intersection of Gal-vez and Ursuline at the time of the accident. She said there were no limousines, police officers on motorcycles, or |Bcars driving with lights turned on. White said that there were no other cars at all passing through the intersection at the time of the accident.
She said she did not hit her brakes before the impact because she was going through the intersection on a green light and did not think she had any need to apply her brakes. She also said her foot was on the gas pedal at the time of the collision. However, on redirect examination, White stated that she slammed on her brakes when she saw Austin’s car enter the intersection. She claimed she was mistaken when she said during cross-examination that her foot was on the gas pedal when the two cars collided.
Officer Wayne Jacque of the New Orleans Police Department testified that he investigated the traffic accident in question and prepared the accident report. His report indicated that there were two vehicles involved in the accident. He said his report did not show that there were any witnesses to the accident, and he would have noted witnesses and included their statements on the report if there had been any. He said he also would have documented the involvement of a third vehicle in the accident if there had been any. In his report, Officer Jacque noted that the only damage to Austin’s vehicle was on the driver’s side. He said he also checked for skid marks at the scene and found none.
Officer Jacque took statements from the drivers of the vehicles involved. The statement he took from Felicia Austin indicated that she was driving northbound on Ursuline in a funeral procession. She did not notice the color of the traffic light controlling traffic on Ursuline when she entered the intersection because she was traveling in the procession and assumed that the detail officers escorting the procession had stopped other traffic at the intersection. He said he attempted to locate the detail officers working that day but was unsuccessful.
|fiThe statement that Officer Jacque took from Queenie White indicated that she was traveling eastbound on North Galvez Street near its intersection with Ursuline Avenue. She entered the intersection because the traffic light controlling traffic on Galvez was green. The collision followed.
Officer Jacque stated that no one at the accident scene indicated that Felicia Austin had a green light at the time she entered the intersection.
On cross-examination, Officer Jacque stated that he is “almost certain” that there was no witness to the accident that came forward with information. Officer Jacque admitted that he did not take state *1131 ments from any of the passengers in the two vehicles involved in the accident; he only took statements from the two drivers. He said that when he arrived at the scene, both cars were in the same location that they were in at the time of the impact. When questioned about his unsuccessful attempt to locate the detail officers that escorted the funeral procession, Officer Jacque stated that he called the traffic division and was unable to find out if anyone was working that day.
After trial, the trial court dismissed the actions of Queenie White and Lois Thomas.[1] In reasons for judgment, the trial court stated that it found Lester Jackson to be an exceptionally credible witness, and that it did not believe Officer Jacque’s denial that Jackson witnessed the accident. The trial court noted that Jackson did not know any of the parties involved in the accident, and it concluded that only Jackson’s civic conscience compelled him to return to the accident scene. It found that Jackson was in a perfect position to observe the mechanics of the |7collision. The trial court also found that Queenie White’s denial of any funeral procession was incredible. The trial court concluded that Queenie White ran the red light, and that although Felicia Austin did not observe the color of her light, it must have been green. Therefore, it found that the sole cause of this accident was Queenie White’s negligence.
On appeal, Queenie White and Lois Thomas argue that the trial court’s decision was manifestly erroneous. Specifically, they argue that the trial court erred in disregarding the investigating officer’s testimony and in giving credence to an alleged eyewitness that was not at the accident scene when the officer arrived.
In Mistich v. Volkswagen of Germany, Inc., 95-0939, pp. 4-5 (La.1/29/96), 666 So.2d 1073, 1077, our Supreme Court set forth the standard of appellate review of a trial court’s factual findings as follows:
It is a well settled principle that an appellate court may not set aside a trial court’s finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly wrong. Rosell, supra at 845; Watson v. State Farm, Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra at 1333. Where the factfinder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, supra at 844. The reviewing court must always keep in mind that if a trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have *1132 weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfin-der’s conclusions were reasonable. Stobart, supra at 883; Theriot v. Lasseigne, 640 So.2d 1305 (La.1994).
In this case, the trial court found that Queenie White was solely at fault in the May 23, 1997 intersectional collision with Felicia Austin’s vehicle. The witnesses offered conflicting testimony about the accident. The trial court evaluated the credibility of the-witnesses. The trial court’s credibility determinations and factual findings, as outlined in its reasons for judgment, are reasonable and will not be disturbed by this Court.
For these reasons, we affirm the judgment of the trial court.
AFFIRMED.

. This action was consolidated with an action that was filed by Felicia Austin and Kim Douglas against Queenie White and Allstate Insurance. Both actions arose out of this same accident. However, this appeal only involves the trial court's dismissal of the case filed by Queenie White and Lois Thomas against Felicia Austin and State Farm Insurance Company.