I Judge MICHAEL E. KIRBY.
In this eoncursus proceeding[1] brought in First City Court, defendants Mr. Wilfred Bolds, d/b/a B & W General Contractors (“B & W”), and Davie Shoring, Inc. each claimed entitlement to $2,600.00 placed in the registry of the court for shoring work performed on property owned by Mr. Edward Kunofsky. Following trial, the court awarded $1,950.00 to Davie Shoring, Inc. and $650.00 to B & W. B & W now appeals the First City Court judgment, arguing that the court erred in awarding any amount of the $2,600.00 to Davie Shoring, Inc.
Edward Kunofsky filed a petition in eoncursus, naming as defendants Davie Shoring, Inc. and B & W. In this petition, Kunofsky stated that defendants performed services in connection with renovation of his property under a contract between Kunofsky and B & W. Da-vie Shoring, a subcontractor of B & W, made formal amicable demand upon Ku-nofsky for payment of its invoice in the sum of $2,600.00 for services rendered on Kunofsky’s property. Kunofsky acknowledged in the petition that he remains indebted to B & W for the sum of $2,600.00, but claimed that such sum is not and will not be due and owing to B & W unless and |2until B & W can provide assurance that Kunofsky is not exposed to the claim alleged by Davie Shoring or any other subcontractors that assisted in the renovation. The First City Court issued an order granting Ku-nofsky’s request to deposit the sum of $2,600.00 into the registry of the court.
In its answer to the petition in concur-sus, B & W claimed that Davie Shoring *1205 never completed the work it agreed to do, and was already paid for the work it actually did. B & W further claimed that it completed the work left undone by Davie Shoring and is due the full amount on deposit with the registry of the First City Court.
Following trial, the court found that Da-vie Shoring performed approximately 75% of the work it was contracted to perform, and that B & W completed the remaining 25% of the project. Based on that finding, the court awarded Davie Shoring $1,950.00 and awarded B & W $650.00.
At trial, Edward Kunofsky testified that he hired Mr. Bolds as general contractor to perform renovation work at his house on Burgundy Street. Mr. Bolds then subcontracted with Davie Shoring to level and shore the house. He said a worker sent by Davie Shoring arrived intoxicated every day and at one point, pulled down his pants and exposed his buttocks to Mr. Kunofsky’s neighbor. Mr. Kunofsky complained to Mr. Bolds about the worker’s behavior and told him to replace the worker immediately. He said the work was only partially completed, so Mr. Bolds sent his own workers to finish the job. Mr. Kunofsky stated that the work was ultimately completed to his satisfaction, but not by Davie Shoring.
Kunofsky testified that he only told Mr. Bolds to replace the particular worker whose behavior he found offensive. He did not tell Mr. Bolds to replace |sDavie Shoring. He admitted he would not have objected if Davie Shoring had just replaced that worker with a different worker.
On cross-examination, Mr. Kunofsky said he could not remember if the intoxicated worker was the only worker on the job at his house from Davie Shoring. He said Davie Shoring was on this job for a couple of weeks.
The next witness was Wilfred Bolds. Mr. Bolds testified that he was the contractor on the renovation job at Mr. Ku-nofsky’s house. He hired Davie Shoring as the subcontractor to perform the level and shoring portion of the job. He terminated Davie Shoring as the subcontractor because of the unprofessional conduct of its workers. He said Davie Shoring had two workers on the job, and one of them was usually intoxicated. He said he informed Mr. Warren Davie of Davie Shoring about the intoxicated worker, but Mr. Davie never replaced the worker. Mr. Bolds and two of his employees finished the leveling and shoring work on the house. Mr. Bolds said that when he and his workers took over, less than fifty percent of the leveling and shoring work had been completed.
Mr. Bolds testified that he paid Davie Shoring $1,500.00 for work it had completed. He said Davie Shoring worked on this job for at least five days before being terminated. He said the job should have taken Davie Shoring two to three weeks to complete. He said he and his workers had to redo most of the work that Davie Shoring had done. In the time that Davie Shoring was on the job, it leveled the house off and installed sills on one side of the house. He explained a sill is the bottom beam on a house that sits on piers.
The next witness was Warren Pat Davie of Davie Shoring. He testified that Mr. Bolds hired his company to replace a rotten sill in the right wall of Mr. Kunofsky’s house and to reconstruct seven piers. He said that he and Mr. Bolds ^entered into a verbal contract whereby Mr. Bolds agreed that Davie Shoring would be paid $5,200.00 to complete the job. He said he was paid $1,500.00 when he agreed to perform the job, and was supposed to be paid $2,600.00 when the sills were changed and the build *1206 ing was ready to be raised. He said a large part of the job is preparation for the changing of the sills because the structure needs to be temporarily supported while the sills are being changed out.
He said that the first time Mr. Bolds complained to him about the intoxicated worker was when Mr. Davie called Mr. Bolds to collect the second payment. He said the job he was hired to perform usually takes two workers about two weeks to complete. He said his workers had completed the portion of the job that Mr. Bolds agreed needed to be completed in order for Davie Shoring to be entitled to receive the second payment. Mr. Davie sent Mr. Bolds an invoice for $2,600.00 when all of the sills were changed and the building was ready to be raised. He said this figure represented the amount owed for work that was already completed. He stated that he left the job when he did not receive the second payment from Mr. Bolds. He said that is his normal procedure if he does not get his second payment; he waits until he receives payment before completing a job. Mr. Davie said he did not leave because Mr. Bolds asked him to leave; he left because Mr. Bolds did not pay him. He said the third and final payment was supposed to be $1,100.00 and that would have been due upon completion of the job.
On cross-examination, Mr. Davie stated that part of his verbal agreement with Mr. Bolds was that the work would be performed in a workmanlike manner. He stated that his work was performed in a workmanlike manner.
On rebuttal, Mr. Bolds testified that the work performed by Davie Shoring was not done properly and was redone by Mr. Bolds’ workers. He said the |B$1,500.00 initial payment to Davie Shoring was just to get work started; it was not for a percentage of the job.
The trial court found that although one of the employees of Davie Shoring conducted himself in an unprofessional manner, the evidence showed that Davie Shoring completed approximately 75% of the work it was hired to perform. The court also ruled that B & W was entitled to be compensated for the work performed to complete the project. On appeal, B & W argues that the trial court erred in finding that Davie Shoring performed work under the contract for which it was owed any funds. B & W claims that there was no evidence to support that finding and only evidence to the contrary.
The trial court was presented with conflicting testimony from Mr. Bolds and Mr. Davie as to the amount of work performed by each and the circumstances surrounding the departure of Davie Shoring from this particular job. In Mistich v. Volkswagen of Germany, Inc., 95-0939, pp. 4-5, (La.1/29/96), 666 So.2d 1073, 1077, our Supreme Court stated as follows:
It is a well settled principle that an appellate court may not set aside a trial court’s finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly wrong. Rosell, supra at 845; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra at 1333. Where the factfinder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great *1207 deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, supra at 844. The reviewing court must always keep in mind that if a trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if |fiit had been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
B & W argues that the trial court erred in stating in reasons for judgment that Mr. Davie testified that his crew performed work on the house for approximately two weeks. A reading of Mr. Da-vie’s testimony shows that he actually stated that he could not remember how many days his crew had worked on this job at the time the second payment became due. However, this misstatement of that portion of Mr. Davie’s testimony is harmless because the testimony showed that Mr. Davie’s second payment was contingent upon a certain amount of the work being completed, and not upon a certain time frame. The trial court apparently found Mr. Davie’s testimony about the amount of work performed by his crew to be credible.
We find that the trial court’s credibility determinations and factual findings were reasonable. Finding no manifest error, we affirm the judgment of First City Court.
AFFIRMED.

. A eoncursus proceeding is defined in La. C.C.P. art. 4651 as "one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictory against all other parties to the proceeding.”